# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SGM Magnetics Corporation, and
Rewest LLC,

                Plaintiffs,

v.

Thomas A. Valerio, et al.,

                Defendants.

_____/

Case No. 1:16-cv-01656

Michael L. Brown
United States District Judge

## **OPINION & ORDER**

Defendant Thomas Valerio owed Plaintiffs about $22 million. They agreed to forgive that debt if he gave them several patents for scrap metal recycling and sorting technologies. Defendant Valerio did so. Plaintiffs now claim the patents were worthless and Defendant Valerio always knew they were. They sued Defendant Valerio to get their money back.[1] Defendants moves for partial judgment on the pleadings, arguing that Counts I, II, and III of Plaintiffs' amended complaint should be dismissed

---

[1] Plaintiffs also sued several companies associated with Defendant Valerio. Those allegations are not relevant to this order.

based on a binding release agreement. (Dkt. 54.) The Court agrees and grants Defendants' motion to dismiss these counts.

## I. Factual Background

Since 2003, Plaintiffs' principal, Didier Haegelsteen, and Defendant Valerio "have collaborated in the design, manufacture, and sales of technology and equipment related to the recycling of scrap metals."[2] (Dkt. 38 ¶ 12.) Defendant Valerio supplied "intellectual property," while Plaintiffs provided "expertise in engineering, manufacturing, marketing, selling, and implementing equipment incorporating that intellectual property." (*Id.* ¶ 14.) Plaintiff SGM Magnetics also supplied Defendant Valerio with a revolving line of credit, the rights to which it later assigned to Plaintiff Rewest LLC. (*Id.* ¶ 17.) As of January 20, 2012, Defendant Valerio owed more than $22,000,000 on a note he gave Plaintiff Rewest connected to that line of credit. (*Id.* ¶ 22.)

---

[2] The parties' business relationship spurred other events and transactions that gave rise to other claims and counts in the complaint. Yet those events do not affect the Court's resolution of the present motion and thus are not mentioned.

2

On or about that day, Plaintiff Rewest and Haegelsteen entered into a transaction with Defendant Valerio for the purpose of resolving his debt. (*Id.* ¶ 23.) They executed several documents, including one known as the "DHTV Assignment Agreement." (*Id.* ¶ 24.) In it, Defendant Valerio transferred ownership of a company known as DHTV Holdings, LLC, ("DHTV") to Plaintiff Rewest. (*Id.*) At the time, DHTV held certain intellectual property rights. (*Id.* ¶¶ 24–25.) "DHTV's entire business consisted of granting sublicenses to third parties [in the European Union] to utilize certain intellectual property rights that Valerio had previously licensed to DHTV." (*Id.* ¶ 29.) As part of the transaction, the parties executed other documents, including an operating agreement, that made Valerio the sole manager of DHTV. At the heart of the entire transaction were four patent applications that Valerio owned and to which he had granted DHTV sublicenses within the European Union. (*Id.* ¶ 29.) Through the transaction, Rewest acquired DHTV's sublicenses. (*Id.* ¶ 32.)

Before the January 20, 2012, transaction, Valerio had represented to Plaintiffs that his patent portfolio was worth hundreds of millions of dollars and that the European rights he had granted DHTV (and Rewest

wanted to acquire) were worth more than the $22 million he owed Rewest. (*Id.*) In the Assignment Agreement, Valerio expressly represented that he knew of no fact "which materially adversely affects the business, operations, prospects, or condition of [DHTV] or of its properties or assets which has not been set forth in this Agreement." (*Id.* ¶ 33.)

The deal was not what Rewest expected. It believes the sublicenses are worthless because the inventions at issue have already been commercialized, with three of the four licenses now having been abandoned or withdrawn. (*Id.* ¶ 35–36.) Plaintiffs claim that, at the time of the January 21, 2012, transaction, Valerio knew the European Union would never grant the patents and thus knew the rights he was assigning to Rewest were worthless but never disclosed that information to Rewest. (*Id.* ¶ 38.)

Plaintiffs sued Valerio claiming "Valerio avoided repayment of $22,000,000 in debt by transferring to Rewest an LLC interest now worth nothing or close to nothing." (*Id.* ¶ 37.) Plaintiffs asserted claims for breach of contract (Count I), unjust enrichment (Count II), and fraud (Count III).

4

Defendant Valerio then came forward with a written release agreement that he believes prevents Plaintiffs from asserting these claims against him. The Release is dated March 15, 2015. (Dkt. 46-1 at 3.) Haegelsteen signed it on his own behalf and as the General Manager of Rewest. (*Id.*) Broad in scope, the Release purports to relinquish and discharge all contract and tort claims Plaintiffs may have against Valerio arising from the January 20, 2012, transaction:

> I, DIDIER HAEGELSTEEN, individually and as General Manager of REWEST LLC, . . . in consideration of one hundred ($100.00) dollars and other good and valuable consideration including maintaining goodwill, do for myself, REWEST LLC, and heirs, executors, administrators, successor corporations or companies, corporate officers, members, release and forever discharge THOMAS A. VALERIO, his heirs, executors, administrators or assigns from all manner of actions, cause of actions, suits, debts, sums of money, claims, demands whatsoever, in law or equity which I now have in contract or tort, as a result of a sale of DHTV LLC on January 20, 2012.

(*Id.* at 1.) The Release also contains a warranty provision that the signatories "fully understand it . . . to be a final release of all claims arising out of the above facts and dispute and one that cannot be reopened at any time in the future regardless of what may take place or later occur." (*Id.* at 2.) Valerio moved for judgment on the pleadings arguing that the Release bars Counts I, II, and III. (Dkt. 54 at 1.)

5

## II. Legal Standard

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). When considering a motion for judgment on the pleadings under Rule 12(c), a court may grant the motion only

> where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. In determining whether a party is entitled to judgment on the pleadings, [the court] accept[s] as true all material facts alleged in the non-moving party's pleading, and . . . view[s] those facts in the light most favorable to the non-moving party. If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied.

*Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citations omitted). A court, however, "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *S.W. v. Clayton Cty. Pub. Schs.*, 185 F. Supp. 3d 1366, 1373 (N.D. Ga. 2016) (internal quotation marks omitted). So "[i]f upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent

6

with the allegations, the court should dismiss the complaint [or claims]." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

"[T]he same standard as a motion to dismiss under Rule 12(b)(6)" thus guides the court. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). A court thus considers only the pleadings before it, which for a 12(c) motion includes the complaint and the answer.

A court may also consider documents attached to the pleadings, but only if the documents are "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). In the context of a judgment on the pleadings, "undisputed" means "the authenticity of the document is not challenged." *Id.*

## III. Discussion

### A. The Law of the Case Doctrine Does Not Apply

Plaintiffs argue that the Court has already decided the Release is ambiguous, making it unenforceable under the law of the case doctrine. Plaintiffs are mistaken.

7

Under the law of the case doctrine, "an issue decided at one stage of a case is binding at later stages of the same case." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997). "A federal court enunciating a rule of law to be applied in a particular case establishes the 'law of the case,' which other courts owing obedience to it must, and which itself will, normally apply to the same issues in subsequent proceedings in that case." *Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir. 1984) (emphasis removed) (internal quotation marks omitted). The law of the case thus requires "a court to follow what has been decided explicitly, as well as by necessary implication, in an earlier proceeding." *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 n.3 (11th Cir. 1990) (emphasis removed).

This Court's previous order did not establish the law of the case or explicitly enunciate a legal ruling about the ambiguity of the release. *See id.* ("[L]aw of the case bars only those legal issues that were actually, or by necessary implication, decided in the former proceeding . . . ."). The February 28, 2017, order denying Defendants' motion to dismiss and motion for sanctions did not involve the Release, as Defendant Valerio had not answered the complaint and asserted release as an affirmative

defense. Indeed, the Court specifically stated that it could not "consider defendants' release-based affirmative defense when deciding the present motion" because the Release was not part of the pleadings at that time. (Dkt. 36 at 7.) The Court explained that "[h]ad Defendants answered the complaint, asserted release as an affirmative defense, attached the Release and any other supporting documents, and filed a motion for judgment on the pleadings, [it] could consider the defense before discovery commences." (*Id.* at 7 n.4.) The Court went on to explain that "Defendants may still walk that path." (*Id.*)

Defendant Valerio now takes that walk, having done what the Court said he must do to bring the Release properly into this dispute. It is hard to understand how the Court could have issued a binding interpretation of the Release when it said it could not even consider it.

Plaintiffs nevertheless point to Judge Jones's characterization of the Release as ambiguous. But, again, the Release was not properly part of the record at that time. The Court mentioned its apparent ambiguity in a footnote when denying Defendants' motion for sanctions, stating "the Release's ambiguity makes it a plausible but not sure-fired affirmative defense that lacks the heft to undergird sanctions." (Dkt. 36 at 12 n.6.)

9

The Court considered the Release only to deny sanctions while refusing to consider it an affirmative defense absent the proper procedural steps to put it before the Court. It would be wildly erratic and unfair for a court to refuse to consider a document, advise a party how it may place the document before the court for proper consideration, and then, when a party does as instructed, rule that a former footnote involving sanctions precludes any substantive consideration of the document. The Court simply did not consider the Release, its alleged ambiguity, or its applicability to Counts I through III, as it was not properly part of the record.

### B. The Release Bars Counts I, II, and III

Plaintiffs claim the Release is ambiguous and should be interpreted not to preclude the claims asserted in Counts I, II, and III. Defendant Valerio, on the other hand, argues that the provision is clear and unambiguous, releasing all claims arising out of the January 20, 2012, transaction.

According to its terms, Georgia law governs the enforceability of the Release. (Dkt. 46-1 at 3.) Under Georgia law, a release is a complete and affirmative defense. *See* GA. CODE ANN. § 13-5-7 ("[A] release by the other

contracting party shall be a complete defense."); *Arnold v. Neal*, 738 S.E.2d 707, 711 (Ga. Ct. App. 2013) (affirming summary judgment on basis of limited release). Georgia law also provides that a release "is a form of contract subject to construction by the court." *Campos v. Williams*, 457 S.E.2d 243, 245 (Ga. Ct. App. 1995) (affirming grant of summary judgment in favor of releasing insurer despite finding settlement contract ambiguous). As such, it is subject to the standard rules of construction, the primary goal of which is to fulfill the parties' intent. GA. CODE ANN. § 13-2-3; *see also Glazer v. Crescent Wallcoverings, Inc.*, 451 S.E.2d 509, 512 (Ga. Ct. App. 1994) ("As in any situation involving the construction of a contract, magic words are not required, and the goal of the court is to look for the intent of the parties."). Releasing parties may release one another not only from claims already in existence, but also from liability for future conduct and unknown claims. *Dennis v. City of Atlanta*, 751 S.E.2d 469, 472 (Ga. Ct. App. 2013).

When interpreting a contract under Georgia law, a court must first "decide whether the language is clear and unambiguous." *CareAmerica, Inc. v. S. Care Corp.*, 494 S.E.2d 720, 722 (Ga. Ct. App. 1997). "If it is, the court simply enforces the contract according to its clear terms." *Id.*

When the language of a contract is plain and unambiguous, no additional construction is required or permissible and "the terms of the contract must be given an interpretation of ordinary significance." *Fernandes v. Manugistics Atlanta, Inc.*, 582 S.E.2d 499, 502 (Ga. Ct. App. 2003). If the contract is ambiguous in some respect, however, a court "must apply the rules of contract construction to resolve the ambiguity." *CareAmerica*, 494 S.E.2d at 722. "[I]f the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury." *Id.* "The construction of a contract is a question of law for the courts, as is the existence or nonexistence of an ambiguity in a contract." *Avion Sys., Inc. v. Thompson,* 666 S.E.2d 464, 467 (Ga. Ct. App. 2008) (internal citations omitted).

Of particular relevance here, "O.C.G.A. § 13-2-2(4) instructs courts to look at the whole contract to instruct the interpretation of any part of it, thereby giving meaningful effect to as much of the contract as possible." *In re Wright Med. Tech. Inc., Conserve Hip Implant Prods. Liability Litig.*, No. 1:16-cv-3044-WSD, 2017 WL 1178082, at *3 (N.D. Ga. Mar. 29, 2017). Courts "should avoid any construction that renders

portions of the contract language meaningless." *Deep Six, Inc. v. Abernathy*, 538 S.E.2d 886, 888 (Ga. Ct. App. 2000).

The Court finds the Release unambiguous. In it, Haegelsteen acted for himself and for Rewest to "release and forever discharge" Valerio "from all manner of actions, causes of actions, suits, debts, sums of money . . . in law or equity which I now have in contract or tort, as a result of the sale of DHTV LLC on January 20, 2012." (Dkt. 46-1 at 1.) The Release then makes it clear that the transaction for which any and all claims are being released "involves the sale of the limited liability company DHTV LLC in exchange for the debt forgiveness," identifies the line of credit that was involved, and explains that the balance of the debt was $22,356,696.39. (*Id.*) The Release unambiguously states the signatories' intention to waive any and all tort or contract claims that arise from the transaction. Counts I, II, and III arise from that transaction and thus fall within the scope of the Release.

Plaintiffs argue the reference to claims "which I now have in contract or tort" renders the provision ambiguous. They say the use of the word "I" creates ambiguity about whether *only* Haegelsteen is releasing claims he may have or whether he and Rewest are releasing

13

claims. But, in the very first sentence of that paragraph, Haegelsteen stated that he is executing the document individually and as the General Manager of Rewest. (Dkt. 46-1 at 1.) He stated that he was giving the release for himself, for Rewest, and "heirs, executors, administrators, successor corporations or companies, corporate officers, [and] members." (*Id.*) And Rewest — not Haegelsteen — was the entity that held the note, was a party to the DHTV transaction, and acquired DHTV on January 20, 2012. Similarly, the third paragraph of the Release "precludes [Didier Haegelsteen] or [Rewest] LLC from instituting any actions" against Valerio. (*Id.*) This point is underscored by the three signature lines after the Release — one for Didier Haegelsteen individually, one for Rewest LLC by Haegelsteen, and one for Thomas A. Valerio. (*Id.* at 3.) Rewest would not be a signatory if it was not releasing any claims it might have had.

Haegelsteen also warranted, again for himself and for Rewest, that both entities had read the Release and understood it to be a "final release of all claims" arising out of the DHTV Transaction that "cannot be reopened at any time in the future regardless of what may take place or later occur." (*Id.* at 2.) The parties executed this document fourteen

14

months after the DHTV transaction. By signing this, Haegelsteen clearly and unambiguously expressed his intent to waive all tort and contract claims he or Rewest might have against Valerio from the transaction. This finding is strengthened by the warranty in the Release that each signatory has "made a full, complete, and independent investigation of the circumstances surrounding this matter, and [has] full knowledge of all facts involved." (*Id.*)

Plaintiffs also claim the Release is ambiguous because of the sentence stating that, while the parties have not yet recognized a dispute between them, the Release "contemplates the possibility that one may develop in the future and precludes [Defendants] from instituting any actions to recover the consideration *paid by Valerio*." (*Id.* at 1 (emphasis added).) They claim this language raises ambiguity about whether the claims released, therefore, are only those seeking the return of $100.00 consideration identified in the Release itself rather than claims arising from the 2012 transaction. It may be that there was a drafting error and the parties intended this paragraph to state Plaintiffs were releasing their right to seek recovery of consideration paid *to* Valerio.

But, even if that were the case and this sentence contains a mistake, that ambiguity would not invalidate the entire Release. The document contains a provision stating that the invalidity of any provision renders no other provision unenforceable. The parties clearly intended to execute a severable contract. Such provisions are enforceable under Georgia law. *See Bulloch S., Inc. v. Gosai*, 550 S.E.2d 750, 755 (Ga. Ct. App. 2001) ("[T]he primary task in determining contract severability remains that of ascertaining the intention of the parties." (internal quotation marks omitted)). And Georgia courts have explained that Georgia law "is against the destruction of contracts on the grounds of uncertainty if it is possible in [the] light of the circumstances under which the contract was made to determine the reasonable intention of the parties." *Id.* at 754. Even excluding the paragraph with the language Plaintiffs claim is ambiguous, the rest of the Release evidences Plaintiffs' clear intent to release all claims they may have against Defendant Valerio arising from the January 20, 2012, transaction.

Plaintiffs contend that until discovery occurs, they cannot determine when future claims in fact accrued, whether it was after the DHTV transaction or the execution of the Release. (Dkt. 55 at 13.) Yet

16

this is not an ambiguity requiring discovery. The Release is necessarily broad enough to cover any and all disputes related to this transaction that could arise in the future, whether that be after the transaction or even after the execution of the Release. Contrary to Plaintiffs' contention, the Release clearly expresses the intent to release claims related to the transaction that may arise in the future, regardless of when they may have "accrued."

## IV. Conclusion

The Court thus **GRANTS** Defendants' Renewed Motion for Partial Judgment on the Pleadings (Dkt. 54) for Counts I, II, and III of Plaintiffs' Amended Complaint (Dkt. 38). Because the Court has ruled on the underlying motion, the Court **DENIES AS MOOT** Defendants' Motion for Oral Argument (Dkt. 58).

**SO ORDERED** this 26th day of June, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE